## JOSEPH J. GENOVESE *v.* GALLO WINE MERCHANTS, INC. (14555)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued February 9—decision released July 20, 1993

---

*W. Martyn Philpot, Jr.,* for the appellant (plaintiff).

*Andrew G. Buckman,* with whom, on the brief, were *Mary Beattie Schairer* and *Donn A. Swift,* for the appellee (defendant).

BORDEN, J. The dispositive issue in this appeal is whether an employee's statutory cause of action for retaliatory discharge, pursuant to General Statutes § 31-290a,[1] is precluded by virtue of the doctrine of col-

---

[1] General Statutes § 31-290a provides: "DISCHARGE OR DISCRIMINATION PROHIBITED. RIGHT OF ACTION. (a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages·caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the workers' compensation commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablish-

lateral estoppel, because of the employee's prior unsuccessful submission of a related claim to final arbitration under a collective bargaining agreement. The plaintiff, Joseph J. Genovese, appeals from the judgment of the trial court granting the motion of the defendant, Gallo Wine Merchants, Inc., for summary judgment.[2] We reverse.

The record reveals the following facts. In November, 1985, the plaintiff was employed by the defendant as a warehouse worker. The plaintiff's employment was governed by the provisions of a collective bargaining agreement between his union, the Teamsters, Chauffeurs and Helpers Local Union No. 443 (union), and the defendant. On two occasions, the plaintiff had suffered physical injuries to his back while lifting boxes in the course of his employment. As a result of these injuries, the defendant was physically unable to work from April 24, 1988, to some time in April, 1989. During this period, the plaintiff filed claims for workers' compensation benefits and received all appropriate payments.

At this point, the plaintiff's and the defendant's version of the facts diverge. The plaintiff claims that in April, 1989, after having received treatment for his injuries, he attempted to return to work but was then improperly discharged by the defendant. The defendant claims, however, that the plaintiff had voluntarily terminated his employment on October 17, 1988, when he requested payment for accrued vacation and per-

ment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the appellate court."

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

sonal days. The defendant claimed that by requesting such compensation the plaintiff had voluntarily quit his job.

The union then filed, on behalf of the plaintiff, a grievance with the defendant pursuant to the collective bargaining agreement. After initial steps in the grievance procedure failed to resolve the dispute, the grievance was submitted to final and binding arbitration. The union and the defendant agreed to submit the following questions to a mutually agreed upon arbitrator: "Did the grievant, Joseph Genovese, voluntarily quit or was he unjustly terminated by the company? If he was unjustly terminated, what shall be the remedy?"[3] After analyzing the submitted evidence, the arbitrator found that the plaintiff had voluntarily quit his job and the arbitrator therefore denied his grievance. Neither the defendant nor the plaintiff sought to confirm, modify or vacate the award pursuant to General Statutes § 52-420.[4]

---

[3] The plaintiff's claim that he was "unjustly terminated" was not explicitly predicated on his filing for workers' compensation benefits. The arbitrator characterized the grievance as follows: "[I]t is the contention of the union that the grievant at no time voluntarily quit his job, but was rather wrongfully denied his right to return to work because of a job related injury, which is in contravention of both the law and the Collective Bargaining Agreement between the parties."

[4] General Statutes § 52-420 provides: "MOTION TO CONFIRM, VACATE OR MODIFY AWARD. (a) Any application under section 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay.

"(b) No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion.

"(c) For the purpose of a motion to vacate, modify or correct an award, such an order staying any proceedings of the adverse party to enforce the award shall be made as may be deemed necessary. Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered in conformity therewith by the court or judge granting the order."

The plaintiff then filed this action in the Superior Court pursuant to General Statutes § 31-290a, which prohibits an employer from discharging or discriminating against any employee because the employee has filed a claim for workers' compensation benefits. The defendant asserted the special defense of collateral estoppel and moved for summary judgment accordingly. The defendant claimed that because the arbitrator had previously determined that the plaintiff had voluntarily quit his job, the plaintiff was precluded by the doctrine of collateral estoppel from relitigating the issue of whether he had been wrongfully discharged. The trial court agreed and granted the defendant's motion for summary judgment. This appeal followed.

I

A

The plaintiff claims that the trial court improperly concluded that the doctrine of collateral estoppel precluded his cause of action pursuant to § 31-290a. To analyze adequately the plaintiff's claim, some additional procedural background is required.

The plaintiff claimed in the trial court and on appeal that the doctrines of res judicata and collateral estoppel should not apply to the present action because, inter alia, his participation in the arbitration proceeding was involuntary and a product of coercion by the union.[5] After oral argument, we issued an order to the parties directing them to file supplemental, simultaneous briefs limited to two issues: "(1) What effect, if any, does this court's decision in *Kolenberg* v. *Board of Education,* 206 Conn. 113, 536 A.2d 577 [cert. denied, 487

[5] Because we conclude that an employee retains his right to pursue a cause of action pursuant to General Statutes § 31-290a despite a prior adverse determination in an arbitration proceeding conducted pursuant to a collective bargaining agreement, we need not address the nature of the plaintiff's participation in the grievance and arbitration proceedings in this case.

U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935] (1988), have on the judgment under appeal? (2) What effect, if any, does General Statutes § 31-51bb have on the judgment under appeal?"[6]

We have previously held that an employee's failure to exhaust the grievance and arbitration procedures available under a collective bargaining agreement deprived a trial court of jurisdiction over a cause of action arising from the employment relationship. *Kolenberg* v. *Board of Education,* supra, 123. In *Kolenberg,* we dismissed for lack of subject matter jurisdiction an employee's action, brought pursuant to General Statutes § 10-151, the Teacher Tenure Act, because the employee had failed to exhaust the grievance procedures afforded by an applicable collective bargaining agreement. We concluded that the grievance and arbitration procedures were the appropriate and exclusive vehicle for the resolution of the plaintiff's claims, "including his constitutional claims." Id.

---

[6] Although the plaintiff claimed in the trial court that the doctrine of collateral estoppel did not apply to his action, he did so only on the grounds that his participation in the arbitration proceeding was not voluntary. The plaintiff did not claim in the trial court that General Statutes § 31-51bb precludes the defendant's assertion of collateral estoppel in the circumstances of this case. Despite his failure to raise this claim and to preserve it for appellate review, we nonetheless conclude that consideration of the statute is appropriate in this case, under the plain error doctrine.

It is plain error for a trial court to fail to apply an applicable statute, even in the absence of the statute having been brought to its attention by the parties. See, e.g., *Ralto Developers, Inc.* v. *Environmental Impact Commission,* 220 Conn. 54, 59, 594 A.2d 981 (1991); *Persico* v. *Maher,* 191 Conn. 384, 403–404, 465 A.2d 308 (1983). Plain error review is warranted in this case because: (1) the statute is plainly applicable, and requires a different result from that reached by the trial court; (2) neither party was prejudiced because the interpretation of the statute does not require further factfinding by the trial court; (3) both parties have had an opportunity to present arguments regarding the statute in their supplemental briefs; and (4) the defendant did not object, despite its opportunity both at oral argument and in its supplemental brief, to the plaintiff's reliance on *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974), which is discussed later.

Shortly after we issued our decision in *Kolenberg,* the legislature enacted General Statutes § 31-51bb, which provides: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement. Nothing in this section shall be construed to give an employee the right to pursue a cause of action in a court of competent jurisdiction for breach of any provision of a collective bargaining agreement or other claims dependent upon the provisions of a collective bargaining agreement."

## B

Both the language of § 31-51bb and the legislative history indicate that the legislature intended to overturn our decision in *Kolenberg* v. *Board of Education,* supra, and thereby eliminate the requirement that a plaintiff who is subject to a collective bargaining agreement exhaust all grievance and arbitration procedures before pursuing any statutory remedies in the trial court. Section 31-51bb provides that a cause of action arising under the state or federal constitution *or state statute* cannot be lost solely because the employee is covered by a collective bargaining agreement. Plainly, therefore, an employee who does *not* exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim.[7] To hold otherwise would be

_____

[7] The predicate of the plaintiff's claim is that he was discharged in violation of General Statutes § 31-290a for seeking workers' compensation benefits. His claim, therefore, "is independent of the collective bargaining agreement. [His] claim of retaliation for filing a workers' compensation claim does not turn on interpretation of [the collective bargaining] agreement." *Baldracchi* v. *Pratt & Whitney Aircraft Division,* 814 F.2d 102, 105 (2d Cir. 1987), cert. denied, 486 U.S. 1054, 108 S. Ct. 2819, 100 L. Ed. 2d 920 (1988).

to deny such an employee the right to pursue a statutory action solely because of the existence of a collective bargaining agreement.[8]

This reading of the statute is well supported by the legislative history of this provision. See Public Acts 1988, No. 88-275. For example, Representative Dale W. Radcliffe stated that the purpose of the legislation is "to insure that the courts of this state are going to be open to all individuals, regardless of whether they are covered by a collective bargaining agreement. . . . There was some language in *Kolenberg* versus *Board of Education* . . . which some felt would prevent an individual covered by a collective bargaining agreement from pursuing [a statutorily based] cause of action." 31 H.R. Proc., Pt. 13, 1988 Sess., pp. 4567–68; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1988 Sess., p. 1449, remarks of Attorney Ruth Pulda ("[e]ach of these [statutory] causes of action is threatened by the holding of *Kolenberg* . . ."); id., p. 1452, remarks of Barry Williams of the AFL-CIO ("[a]s I understand it, Connecticut courts have erroneously ruled that a worker covered by a collective bargaining agreement must [adjudicate all claims] through the process established in the contract before seeking a remedy in court").

## II

The conclusion that a *failure* to exhaust the grievance procedures does not bar the assertion of a statu-

---

[8] The language of the statute and the legislative history of the statute also make clear that the legislature intended to retain the exhaustion requirement in cases in which the plaintiff's claim arises from a right dependent on the provisions of the collective bargaining agreement. See 31 H.R. Proc., Pt. 13, 1988 Sess., pp. 4564–65, remarks of Representative Jay B. Levin ("this legislation would make clear . . . that if an employee has a right which accrues pursuant to the collective bargaining agreement, for example, a dispute over wages, hours or . . . any right that is established by the collective bargaining agreement . . . the employee would have to exhaust his or her rights first as provided by the collective bargaining agreement").

tory cause of action does not, however, necessarily resolve this case, in which the plaintiff did, albeit unsuccessfuly, invoke the grievance and arbitration procedures. Despite the legislative elimination, in broad terms, of the exhaustion requirement for claims based on an independent statutory right, the defendant contends that the doctrine of collateral estoppel nonetheless applies to the plaintiff's cause of action.[9] Specifically, the defendant argues that § 31-51bb does not apply in this case because that provision prohibits denial of the plaintiff's right to bring a court action *solely* on the basis that he is covered by a collective bargaining agreement. In this case, the defendant argues, the cause of action is precluded, not *solely* because the plaintiff is covered by a collective bargaining agreement, but because, pursuant to that agreement, he has litigated the issue of whether he was unjustly discharged or voluntarily quit. Consequently, he contends, the plaintiff is collaterally estopped from relitigating the same questions of fact.

We agree with the defendant that ordinarily a factual determination made in final and binding arbitration is entitled to preclusive effect.[10] *Corey* v. *Avco-Lycoming*

---

[9] Although in theory the plaintiff's entire action would not be precluded by the doctrine of collateral estoppel, the plaintiff obviously would be unable to prevail if the doctrine operated to preclude relitigation of the issue of whether he quit or had been fired by the defendant.

[10] Although the principal question in this case has been framed in terms of collateral estoppel, the issue can also be described as implicating the doctrine of election of remedies. See *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 49 n.10, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). "[T]he doctrine of exhaustion of remedies fosters an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." (Internal quotation marks omitted.) *Shortt* v. *New Milford Police Department,* 212 Conn. 294, 306 n.10, 562 A.2d 7 (1989). Because the parties and the trial court cast the issue in terms of collateral estoppel, we analyze the claim under that rubric.

*Division,* 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); see also *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance,* 208 Conn. 187, 198, 544 A.2d 604 (1988). The legal doctrines of res judicata and collateral estoppel are designed to "promote judicial economy by preventing relitigation of issues or claims previously resolved." *Scalzo* v. *Danbury,* 224 Conn. 124, 127, 617 A.2d 440 (1992).

This case requires us to determine, therefore, whether the doctrine of collateral estoppel applies to the plaintiff's cause of action under § 31-290a, or whether, contrary to that general rule, the adverse determination in the arbitration proceeding is not entitled to preclusive effect. We conclude that the legislature intended that such an adverse determination should not have preclusive effect.

Section 31-51bb was enacted by the legislature to ensure that employees covered by a collective bargaining agreement receive the same opportunity to litigate their statutory claims as those employees who are not covered by a collective bargaining agreement. 31 H.R. Proc., Pt. 13, 1988 Sess., pp. 4567–68. The defendant's narrow construction of § 31-51bb would defeat that legislative intent.

The legislative history indicates that the legislature intended that employees covered by a collective bargaining agreement retain the right to pursue a statutory action despite an adverse determination in a grievance or arbitration proceeding. Representative Jay B. Levin stated, in response to a fellow legislator's question: "[W]hat this act also makes clear is if the employee has had a right violated, or alleges that a right has been violated by their employer, which has a remedy outside of the collective bargaining agreement . . .

[t]hat employee would still be able to bring an independent action in state or federal court, *regardless of whether or not they had exhausted the provisions of the collective bargaining agreement."* (Emphasis added.) 31 H.R. Proc., Pt. 10, 1988 Sess., p. 4565.

Moreover, Representative Levin clearly indicated that the statute would codify federal cases that have refused to give collateral estoppel effect to an adverse determination in an arbitration proceeding in an employee's subsequent court action brought to vindicate statutory rights that are not dependent upon a collective bargaining agreement. Id. The purpose of the bill "is consistent with existing decisions of the United States Supreme Court . . . . In particular, the cases that this statute would seek to uphold . . . [are] the United States Supreme Court decisions of [*McDonald* v. *West Branch,* 466 U.S. 284, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984); *Barrentine* v. *Arkansas-Best Freight System,* 450 U.S. 728, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)]." Id., pp. 4565–66.

In each of these decisions, the United States Supreme Court explicitly refused to give preclusive effect to a prior arbitral decision in a subsequent court action brought to vindicate an employee's statutory rights. See *McDonald* v. *West Branch,* supra, 292 ("in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement"); *Barrentine* v. *Arkansas-Best Freight System,* supra, 745 ("petitioners' [statutory] claim is not barred by the prior submission of their grievances to the contractual dispute-resolution procedures"); *Alexander* v. *Gardner-Denver Co.,* supra, 59–60 (plaintiff may pursue statutory cause of action despite prior adverse determination by arbitrator pur-

suant to collective bargaining agreement). In light of this history, we read § 31-51bb to incorporate these principles so as to permit an employee to assert statutory rights in a court action despite a prior adverse determination of the same or similar claim in an arbitration proceeding brought pursuant to a collective bargaining agreement.

Our reading of § 31-51bb is supported by sound policy reasons that justify limiting the doctrine of collateral estoppel in these circumstances. First, although an "arbitrator may be competent to resolve many preliminary factual questions"; *Barrentine* v. *Arkansas-Best Freight System,* supra, 743; the scope of the submission may mean that the arbitrator lacks the power to decide mixed questions of law and fact[11] or the ultimate legal issue of whether, for example, the employee was discharged in violation of § 31-290a. The ultimate determination reached by the arbitrator, therefore, often may be made only by reference to the full range of "public law" and public policy considerations that inform the employer-employee relationship. An arbitrator's frame of reference, however, may be narrower than is necessary to resolve the dispute because the arbitrator's power is both derived from, and limited by,

---

[11] In the present case, the arbitrator appears to have found that the plaintiff had quit his job primarily because he had requested payment for accrued vacation and personal days. Although this conclusion rests in part on the determination that the plaintiff had, in fact, requested such payment, it also rests on an implicit conclusion that such a request, as a matter of law, may be deemed "a voluntary quit." This legal determination, however, may require the arbitrator to consider the full body of law governing the employment relationship. As noted above, such a reference, in some instances, may be beyond the scope of the parties' submission.

Although we recognize that some factual issues determined by the arbitrator will not contain such a legal element, we stress that the preservation of rights created by General Statutes § 31-51bb is expressed in general terms. Consequently, in interpreting that provision, we are required to craft a rule of general applicability that will vindicate the legislative preference for a full judicial determination of an employee's statutory cause of action.

the collective bargaining agreement and the submission of the parties. *Alexander* v. *Gardner-Denver Co.,* supra, 53; see also *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 185, 530 A.2d 171 (1987).

In reaching this conclusion, we do not suggest that an arbitrator lacks the competence or expertise to decide legal issues, including statutory claims. See, e.g., *East Hartford* v. *East Hartford Municipal Employees Union, Inc.,* 206 Conn. 643, 654, 539 A.2d 125 (1988). We merely recognize that the scope of the submission by the parties may limit the arbitrator's ability to consider all of the relevant legal considerations. We also recognize that, in enacting § 31-51bb, the legislature was free to limit an arbitrator's power to determine finally and conclusively factual and legal issues that are critical to an employee's right to pursue a statutory cause of action in the Superior Court.

Second, preclusion is not warranted in this case because § 31-290a, upon which the plaintiff's action is based, is a remedial statute that was intended to guarantee the rights afforded to injured employees under our workers' compensation laws. Section 31-290a provides broad remedies to an employee improperly discharged for filing for workers' compensation benefits, including reinstatement, back wages, compensatory damages, attorney's fees, costs and punitive damages. The creation of the substantive right to bring an action for unjust dismissal, and the inclusion of these broad remedies, indicate that the legislature intended that employees should be able to enforce judicially their right to workers' compensation benefits by subjecting employers to the significant liability that can be imposed only in an action brought pursuant to § 31-290a. See *Barrentine* v. *Arkansas-Best Freight System,* supra, 745. "[A]rbitrators very often are powerless to grant the aggrieved employees as broad a range of relief." Id. The creation of the substantive

rights and remedies in § 31-290a, therefore, reflects a legislative preference for a full *judicial* determination of an employee's § 31-290a claim.

Third, the standard rules of preclusion are not warranted in this case because reliance on an employee's union to vindicate adequately the employee's statutory rights may not be justified. "[E]ven if the employee's claim were meritorious, his union might, without breaching its duty of fair representation, reasonably and in good faith decide not to support the claim vigorously in arbitration." Id., 742–43; *McDonald* v. *West Branch,* supra, 291 ("The union's interests and those of the individual employee are not always identical or even compatible. As a result, the union may present the employee's grievance less vigorously, or make different strategic choices, than would the employee."); *J. I. Case Co.* v. *National Labor Relations Board,* 321 U.S. 332, 64 S. Ct. 576, 88 L. Ed. 762 (1944). Because a union's objective may be to maximize the rights and benefits of its members as a whole, rather than to achieve the best possible outcome for an individual employee in a particular case, a union weighing individual and collective interests might validly allow some employee's statutory rights to be sacrificed "if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole." *Barrentine* v. *Arkansas-Best Freight System,* supra, 742.[12] In fact, a represen-

---

[12] In fact, a union breaches its duty of fair representation to an individual member only if the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca* v. *Sipes,* 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967). The United States Supreme Court has noted that such a breach "may prove difficult to establish." *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 58 n.19, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974).

Despite the plaintiff's claim that he was coerced by his union into arbitrating his grievance, we do not mean to suggest, or in any way imply, that the plaintiff's union has acted improperly or breached its duty of fair representation.

tative from the AFL-CIO testified at the joint hearings on § 31-51bb that "unions cannot serve as the repository of . . . all . . . individual rights, and rights which arise out of the Constitution or statutes should be settled in the courts." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1988 Sess., p. 1452, remarks of Barry Williams.

Finally, although arbitral procedures are well suited to the resolution of contractual disputes, the legislature, in enacting § 31-51bb, was entitled to consider that arbitration may be a less effective forum for the final resolution of statutory claims.[13] See *McDonald* v. *West Branch,* supra, 291; *Alexander* v. *Gardner-Denver, Co.,* supra, 57–58. "[T]he factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable." *Alexander* v. *Gardner-Denver Co.,* supra.

We recognize that our conclusion in this case may seem inconsistent with our traditional respect for the integrity of grievance and arbitration proceedings. See, e.g., *Garrity* v. *McCaskey,* 223 Conn. 1, 10, 612 A.2d 742 (1992); *John A. Errichetti Associates* v. *Boutin,* 183 Conn. 481, 488, 439 A.2d 416 (1981). Our decision can, however, be seen as consistent with such respect to the extent that it may, as a practical matter, encourage the use of arbitration.

As noted in part I, § 31-51bb was intended to overrule our decision in *Kolenberg* v. *Board of Education,*

---

[13] The informality of the arbitral procedures, however, enables such proceedings to function as an efficient, inexpensive, and expeditious means for ordinary disputes arising solely under the collective bargaining agreement. *Alexander* v. *Gardner-Denver Co.,* 415 U.S. 36, 58, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974).

supra, by allowing an employee who seeks to vindicate a statutory right to proceed to court whether or not the employee has first exhausted the grievance and arbitration procedures created by the applicable collective bargaining agreement. If an adverse determination by the arbitrator were entitled to preclusive effect, however, an employee, fearing such a determination, might seek relief by initially filing a court action. This choice might be more attractive to an employee because the employee would retain a greater degree of control over the course of the litigation, as opposed to the grievance proceedings in which the union "controls access to the arbitrator, the strategy and tactics of how to present the case, the nature of the relief sought, and the actual presentation of the case." (Internal quotation marks omitted.) *McDonald* v. *West Branch*, supra, 291 n.10.

Without the risk of the preclusive effect of an adverse determination, however, the employee might select the less costly and more expeditious grievance procedures. Id., 292 n.11 ("a rule of preclusion might have a detrimental effect on the arbitral process . . . [because if] such a rule [were] adopted, employees who were aware of this rule and who believed that arbitration would not protect their [statutory] rights as effectively as an action in court might bypass arbitration"); *Alexander* v. *Gardner-Denver Co.*, supra, 59 (a rule of preclusion would reduce the possibility of voluntary compliance or settlement of statutory claims, and thus the result "could well be more litigation, not less").

We also recognize, however, that construing the statute in accordance with its legislative history creates a range of problems that the legislature may not have fully considered when it enacted § 31-51bb. In deciding to afford a judicial remedy despite the employee's

coverage by a collective bargaining agreement, the legislature unquestionably swept more broadly than was required to overrule our decision in *Kolenberg* v. *Board of Education*, supra. Its apparent decision to overturn established principles of collateral estoppel will enable any employee invoking any statutory or constitutional claim, not only a discrimination claim under § 31-290a, to test the waters in a grievance proceeding and then, if dissatisfied with the outcome, to relitigate the issue de novo in the Superior Court.

This legislative decision runs contrary to the established judicial principle that voluntary recourse[14] to arbitration proceedings allows the prevailing party, after a final arbitral judgment, to raise a defense of collateral estoppel or res judicata if the losing party thereafter initiates a judicial cause of action. *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); see also *Convalescent Center of Bloomfield, Inc.* v. *Department of Income Maintenance*, 208 Conn. 187, 198, 544 A.2d 604 (1988). The applicability of principles of res judicata to arbitration proceedings reflects the confidence, ordinarily shared by the legislature; see General Statutes § 52-418; and by our courts, that arbitrators have the competence to decide complex issues of law and of fact; see, e.g., *Bodner* v. *United States Automobile Assn.*, 222 Conn. 480, 489–91, 610 A.2d 1212 (1992); *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3*, 203 Conn. 133, 145–46, 153–55, 523 A.2d 1271 (1987); including issues relating to disputes arising in the workplace. See *Daley* v. *Hartford*, 215 Conn. 14, 24, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513,

---

[14] An entirely different issue is raised by an employee's challenge to the voluntariness of participation in grievance proceedings. Indeed, the plaintiff has raised this issue in this case. See footnote 5.

112 L. Ed. 2d 525 (1990); *East Hartford* v. *East Hart-ford Municipal Employees Union, Inc.,* 206 Conn. 643, 654, 539 A.2d 125 (1988). Outlawing the defense of collateral estoppel also runs counter to the established legislative policy favoring alternate methods of dispute resolution as economical and efficient alternatives, in the days of crowded court calendars, to judicial disposition of civil cases. That policy has only recently been reaffirmed by the enactment of Public Acts 1993, No. 93-108, concerning the Joint Sta-Fed Alternative Dispute Resolution Program.

The legislative decision to permit an employee to disregard the outcome of an adverse grievance or arbitration proceeding arising out of a collective bargaining agreement also raises questions of fairness that the legislature may want to reconsider. As currently drafted, § 31-51bb permits an employee to decide whether to initiate arbitration proceedings in the first instance and thereafter to decide whether to walk away from an unsatisfactory grievance or arbitration outcome. The employer, meanwhile, is limited to the narrow review afforded by General Statutes § 52-418 if it concludes that an arbitral result was inappropriate. A similar disparity in access to our courts, in the case of compulsory lemon law arbitration procedures, was held unconstitutional in *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 93–98, 561 A.2d 917 (1989), because it violated the open courts provision of our state constitution.[15]

---

[15] The case involved the constitutionality of the arbitration provisions in Lemon Law II, General Statutes (Rev. to 1989) § 42-181 (c). We found no constitutional impediment in the statutory decision to empower an automobile purchaser to make the decision whether to invoke lemon law arbitration in the first instance. "The difficulty arises because § 42-181 (c), in addition, permits the consumer, having invoked arbitration, to disregard an unfavorable award and to pursue a de novo civil action, while it limits the manufacturer to the record review contemplated by [General Statutes]

Although labor law grievance procedures are not themselves directly compulsory, our statutes mandate collective bargaining; General Statutes § 31-104; and such mandated bargaining regularly results in collective bargaining contracts that establish mandatory grievance procedures for the resolution of workplace disputes. "If the contract requires arbitration of unresolved grievances, the duty to bargain in good faith includes the duty to participate in good faith in the grievance arbitration process, for 'dispute resolution under the grievance-arbitration process is as much a part of collective bargaining as the act of negotiating the contract.' *United Technologies Corporation,* 268 N.L.R.B. 557, 559 (1971); see also *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)." *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 121, 584 A.2d 1172 (1991).

Despite these serious concerns, we are persuaded that the language of § 31-51bb, illuminated by its legislative history, supports the conclusion that the legislature intended to permit an employee, despite his prior voluntary submission of a related claim to final arbitration under a collective bargaining agreement, to pursue a statutory cause of action in the Superior Court. Consequently, the trial court improperly granted the defendant's motion for summary judgment.

The judgment is reversed and the case is remanded for further proceedings according to law.

§ 52-418. The parties have cited no authority, and we have discovered none, that the legislature, in fashioning rules for judicial review, may discriminate in such a fashion against the party whose participation in statutory arbitration proceedings is compulsory. We hold that such disparate treatment violates the [manufacturers'] constitutional right to a reasonable opportunity to have a remedy, 'by due course of law,' in our courts. Conn. Const., art. I, § 10." *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 97-98, 561 A.2d 917 (1989).

In this opinion PETERS, C. J., CALLAHAN and NOR-COTT, Js., concurred.

BERDON, J., dissenting in part and concurring in part. I dissent because I do not believe that General Statutes § 31-51bb permits an employee, who voluntarily submits to and actively participates in an arbitration proceeding, subsequently to pursue an independent judicial remedy on the same subject matter.

The majority's interpretation of § 31-51bb violates established principles of statutory construction for several reasons. First, the plain language of § 31-51bb requires only that the employee shall not "be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement." Section 31-51bb merely states that the employee is not bound by a collective bargaining grievance procedure, but may pursue his constitutional or statutory claims directly in court. The statute does *not* give the employee the right to elect to pursue a collective bargaining remedy such as the arbitration in the present action, and then ignore the outcome. The majority's interpretation of § 31-51bb would allow the employee to bring an independent action against the employer, even if the employee had succeeded in the arbitration proceeding but was not satisfied with the monetary award. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language." (Internal quotation marks omitted.) *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988).

Second, the majority acknowledges that although the legislature intended to overrule this court's decision in *Kolenberg* v. *Board of Education*, 206 Conn. 113, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903,

101 L. Ed. 2d 935 (1988), it "unquestionably swept more broadly than was required . . ." and in doing so overturned established principles of collateral estoppel. That sweep, however, was not accomplished by the precise language of § 31-51bb but only by the judicial gloss placed upon it by the majority. In doing so, the majority ignores long established principles of statutory interpretation requiring that a " 'statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express.' " *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 573, 522 A.2d 763 (1987).

Finally, the majority acknowledges that its decision, which permits an employee to avoid an adverse outcome in an arbitration proceeding but binds an employer, may violate the open courts provision of our state constitution. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 88–89, 561 A.2d 917 (1989) (striking down the compulsory lemon law that authorized consumers, but not manufacturers, to arbitrate disputes before panels created by the department of consumer protection and that authorized consumers, but not manufacturers, to avoid unfavorable arbitration outcomes and bring the same claim before the court). When interpreting a statute, we must "follow the 'golden rule of statutory interpretation' . . . that the legislature is presumed to have intended a reasonable, just and *constitutional* result." (Citations omitted; emphasis added.) *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

Disregarding these concerns, the majority holds that an employee may pursue a cause of action in the Superior Court, despite the voluntary submission of the claim to final arbitration. Since the legislature has failed

to provide specifically that employees may have two bites of the apple, I am reluctant to read into the plain language of the statute a result that undermines sound principles of statutory construction, collateral estoppel, and constitutional law.

I have a further concern. The majority, through statutory construction, has tipped that delicate procedural balance for resolving grievances between organized labor and management, by giving the employee an advantage not envisioned by the clear mandate of the legislation. The grievance procedure was bargained for by both labor and management in order to create the necessary harmony for the interests of society. Just last year, Justice Borden, writing for a unanimous court, recognized the societal benefits of "an orderly and efficient system of dispute resolution in the public sector in the form of union grievance procedures set forth in a collective bargaining agreement, with benefits inuring to both employer and employee." *Tedesco* v. *Stamford,* 222 Conn. 233, 244, 610 A.2d 574 (1992). This has equal application to employment in the private sector.

I also write separately to endorse the procedural activism employed by the majority in this case. The plaintiff in this case failed to raise his claim under § 31-51bb both in the trial court and initially before this court. We, *on our own,* raised the applicability of § 31-51bb and ordered the parties to submit supplemental briefs. Accordingly, the majority has decided this case on the basis of a claim that was never raised in the trial court and was raised in this court only as a result of our direction. Although I do not agree with the majority's interpretation of § 31-51bb, I applaud the procedural route employed in this case. We may now employ this procedure in other cases as justice demands. Certainly, if we may use this newly established procedure to achieve justice on behalf of civil litigants, where

only money is involved, we must do likewise when an individual's liberty is at stake.[1]

I respectfully dissent to the majority's interpretation of § 31-51bb, but concur with the procedural route adopted to review the statute.

[1] Indeed, the majority goes much farther in this case than the Vermont Supreme Court in *State* v. *Jewett*, 146 Vt. 221, 500 A.2d 233 (1985). In *Jewett*, the issue was raised by the defendant on appeal, but inadequately briefed. As noted above, we raised the issue of General Statutes § 31-51bb on our own. The court in *Jewett* noted the following: "The path of caution, however, is not the path of timidity. When a state constitutional issue is squarely raised on appeal, and it appears the issue has possible merit, if the briefing is inadequate, we will order a rebriefing or address the issue. Otherwise it will seem that we are 'decided only to be undecided, resolved to be irresolute, adamant for drift . . . all-powerful for impotence.' " Id., 225, quoting W. Churchill, While England Slept (1938).