[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT
CT Page 2451
The defendant, The Hartford Police Union ("Union"), has moved to set aside the verdict in the above-captioned action, which was rendered on August 16, 1994 in favor of the plaintiff, Allen J. Labbe, in the amount of $190,000 and in favor of the plaintiffs, John Murdock, John D. Raphael, Eddie M. Rivera, and Gerry Pleasent, in the amount of one dollar each.
The complaint alleges that the Union breached the duty of fair representation and the Union by-laws when it entered into an Agreement with the defendant City of Hartford ("City") to the effect that police officers could not use their military service time to reduce the required number of years of city service for retirement purposes. The complaint further alleges as follows: the aforementioned Agreement violates the 1987 Collective Bargaining Agreement ("CBA") between the Union and the City and violates the Union bylaws in 1987 the retirement provisions of the CBA were changed to permit police officers who served in the Armed Forces during the Vietnam Era to purchase up to four years of their military service time to use toward retirement from the Hartford Police Department; prior to July 13, 1988 various Union representatives and City officials represented to Labbe that he could use his military service time to reduce the required number of years to retirement (referred to as use of military service time "up front"); in reliance on those representations on July 13, 1988 Labbe notified Police Chief Bernard Sullivan of his intention to retire on October 11, 1988; on July 28, 1988 the City issued an opinion that it took the position that the City Charter prohibited the purchasing of military time "up front"; thereafter the Union and the City signed the above-referenced Agreement which provided that military service time could not be used to reduce the required number of years of city service for retirement purposes, or, in other words, "up front"; on December 9, 1988 Labbe bypassed the City and submitted an application for a pension directly to the defendant Hartford Pension Commission; on April 12, 1989 the Hartford Pension Commission rejected Labbe's application for pension; the decision of the Hartford Pension Commission deprived Labbe of three years of pension and also deprived various plaintiffs, including Murdock, Raphael, Rivera and Pleasent, of their right to apply their military service time to their years of service as police officers.
This action was brought against the Union, the City and the CT Page 2452 Hartford Pension Commission. On October 25, 1990 this Court (Freed, J.) granted a Motion to Dismiss filed by the City and the Hartford Pension Commission. The case was tried against the Union, the only remaining defendant. Prior to the commencement of the trial the Court permitted the plaintiffs to amend their demand for relief to add a claim for money damages in an amount greater than $2,500 and also permitted the plaintiffs to add a claim for emotional distress.
The following is a summary of the pertinent evidence at trial. Prior to October 30, 1987 the Union and the City engaged in negotiations concerning the CBA between the City and the Union for the period of July 1, 1987 through June 30, 1990. One of the items which the Union negotiated and obtained for its members was the right to use up to four years of military service time to increase the amount of their pensions upon retirement. The relevant portions of the CBA provide:
 Section 3.6c Pensions
Effective July 1, 1988 for all persons who became sworn police officers prior to July 1, 1987, all present retirement and survivor benefits shall remain in effect except as follows:
. . .
 3. Normal retirement for employees hired before July 1, 1984 shall be after twenty years of continuous service. Employee pension benefits vest after ten (10) years of continuous service.
 4. An employee who vests his or her pension and leaves the service of the City will be entitled to collect a pension benefit commencing on the date he or she would have reached his or her normal retirement date.
 5. An employee may purchase up to four (4) years of Military Service time for service in the Armed Forces of the United States for periods of service, any of which occurred during the periods set forth in Section 27-103
of the General statutes of the State of Connecticut, at the rate payable at the time of entry into City service, with interest at the rate of 7% per annum. The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of hisCT Page 2453 or her retirement allowance provided such employee shall have completed (10) years of continuous service or fifteen (15) years of active aggregate service with the City of Hartford or shall be retired prior thereto, due to disability incurred in the course of his or her employment. (emphasis added)
In 1988 Allen J. Labbe had 17 years of continuous service with the Hartford Police Department. In July, 1988, while he was on patrol in Hartford, Labbe contacted Thomas Grodecki, who was the vice president of the Union and a member of the Hartford Pension Commission. He visited Grodecki's "beat" in order to discuss the issue of Labbe's use of his military service time to hasten his retirement. Labbe testified that Grodecki told him that under the CBA Labbe could use his military service time to retire before he had served for twenty years, or "up front." Grodecki testified that he had spoken to Labbe about the up front use of military time in 1988. He denied telling Labbe that he could use the military time up front, but admitted that he told Labbe that the Union would be delighted if the City and the Pension Commission did allow such use of military time.
After talking with Grodecki on one occasion, Labbe borrowed approximately $6800 and used those funds to purchase 3 years and 10 months of military service time. By letter dated July 13, 1988 he informed Chief Sullivan of his intention to retire from the Police Department on October 11, 1988 Chief Sullivan did not process that letter, but instead, returned it to Labbe with a handwritten inscription which stated, "you do not have sufficient years (20) for normal retirement. Is this your intention?"
On July 28, 1988 the City issued an opinion that the Charter of the City of Hartford prohibited the purchasing of military time to qualify for retirement benefits before "normal retirement age." In July and early August, 1988, the City and the Union entered into discussions concerning the amount by which each year of military time purchased would increase the pension amount. These discussions took place because the CBA provided that pensions for employees hired before July 1, 1984 would be based upon 2.65% of final average pay for each year of service for the first twenty years of service and 2% of final average pay for each year of service greater than twenty, but did not specify whether a year of purchased military time would increase a pension by 2% or by 2.65% of final average pay. The City Manager initially took the position that military time would increase the CT Page 2454 pension amount by only 2% of final average pay, but the Union and agents of the City who had actually negotiated the CBA contended that the increase amount should be 2.65%.
As a result of the foregoing discussions, the City and the Union entered into a two page Agreement on August 5, 1988, which specified that each year of military time purchased would increase the pension by 2.65% of final average pay and stated: "Any eligible military service purchased by a police officer shall be added to the officer's years of service at retirement and shall not be counted towards the required length of service for normal retirement." The Union posted a notice informing its membership of the contents of the Agreement.
On September 26, 1988, when he knew that both the Union and the City had taken the position that military time could not be used to hasten normal retirement date, Labbe submitted a second letter of resignation. This letter was again addressed to Chief Bernard Sullivan and again expressed Labbe's intention to retire on October 11, 1988. Chief Sullivan apparently accepted this resignation. Thereafter, Labbe tried to withdraw the letter of resignation, but the City refused to allow him to do so. Labbe initially testified at trial that he took all of the steps leading to his retirement based on his one conversation with officer Grodecki in which Grodecki advised him that he could use his military time up front. However, on cross examination by the Union's attorney, Labbe admitted that he submitted his second letter of resignation based solely on the advice of his attorney.
Not having the requisite twenty years for retirement, Labbe did not receive his pension during a three year period after his retirement. However, he admitted that by purchasing his military time for one payment of $6800, he had received and would continue to receive an additional $4400 per year in pension from the City.
The evidence further showed that none of the plaintiffs had been involved in negotiating the CBA, but the Union officials who were involved all stated that there was never any intent expressed by anyone in the course of the negotiations that military time could be used to hasten retirement. Some of the Union officials, Quigley and Grodecki, could have retired early if they had been able to use their military time to hasten their retirement. Grodecki testified that he would have retired early if he could have done so by purchasing military time and using it "up front." All of the plaintiffs benefitted [benefited] from the right to CT Page 2455 purchase military time for the purpose of increasing their pension amounts.
Both Connecticut and Federal courts recognize that a union has a duty of fair representation with respect to its members.Mastro v. Board of Education, 200 Conn. 482, 487, 511 A.2d 310
(1986); Genovese v. Gallo Wine Merchants, Inc., 226 Conn. 475,488, 628 A.2d 946 (1993); Connecticut Education Assoc. v. Boardof Labor Relations, 5 Conn. App. 253, 275, 498 A.2d 102 (1985);Humphrey v. Moore, 375 U.S. 335, 11 L.Ed.2d 370, 84 S.Ct. 363
(1964); Vaca v. Sipes, 386 U.S. 171, 17 L.Ed.2d 842, 87 S.Ct. 903
(1967); Airline Pilots v. O'Neil, 499 U.S. 65, 113 L.Ed.2d 51,111 S.Ct. 1127 (1991); Ford Motor Co. v. Huffman, 345 U.S. 330,97 L.Ed. 1048, 73 S.Ct. 681 (1953).
In Ford Motor Co. v. Huffman, supra, the United States Supreme Court held that a union did not violate the duty of fair representation when it agreed to provisions in a union contract which resulted in layoffs of certain union members who had been employed by Ford Motor Co. for a longer period of time than other union members, who were not laid off. The Court observed:
 Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. 345 U.S. at 338.
When Dealers Transport Company acquired E L Transport Company and many of Dealers' employees were laid off while most E L employees retained their jobs, several Dealers' employees brought an action against the employer and the union. They claimed that the union president violated his duty of fair representation when he told Dealers' employees that their jobs would be secure, but later supported the claim of E L employees that seniority lists of both companies should be integrated and that integration resulted in the layoffs. The Kentucky Court of Appeals enjoined the implementation of the seniority list integration. The United States Supreme Court in Humphrey v.Moore, supra, reversed and found that the union did not violate CT Page 2456 the duty of fair representation in taking a good faith position contrary to that of some of its members or in supporting the position of one group of employees against that of another. After quoting the language from Ford Motor Co. v. Huffman set forth above the Court added:
 Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes.
. . .
 As far is this record shows, the union took its position honestly, in good faith and without hostility or arbitrary discrimination. . . . By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant considerations, not upon capricious or arbitrary factors. 375 U.S. at 349
In Vaca v. Sipes, supra, the plaintiff sued his union claiming that he had been discharged from his employment in violation of the collective bargaining contract between his employer and the union, and that the union had arbitrarily refused to take his grievance to arbitration. After the jury awarded the plaintiff compensatory and punitive damages, the trial judge set aside the verdict. The Supreme Court of Missouri reversed and reinstated the verdict. The United States Supreme Court reversed the decision of the Missouri Supreme Court and held that: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 386 U.S. at 190. The Court also held that in the absence of arbitrary or bad faith conduct by the union, a union's refusal to pursue a meritorious grievance did not constitute a breach of the duty of fair representation. 386 U.S. at 193.
In Air Line Pilots v. O'Neil, supra, the Airline Pilots Association, International (union) and Continental Airlines entered into an agreement to settle a lengthy strike. A group of pilots who had gone out on strike sued the union, claiming a breach of the duty of fair representation on the grounds that the settlement agreement favored non-striking pilots and produced a result which was worse than that which the union would have CT Page 2457 obtained by unilaterally ending the strike. The Court upheld the District Court's summary judgment in favor of the union and stated that a union's actions were arbitrary within the meaning of Vaca v. Sipes, supra, "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a `wide range of reasonableness,' FordMotor Co. v. Huffman, (citation omitted), as to be irrational."499 U.S. at 67. The Court disagreed with the Fifth Circuit Court of Appeals, which had reversed the judgment of the district court:
 The Court of Appeals placed great stress on the fact that the deal struck by [union] was worse than the result the union would have obtained by unilateral termination of the strike. Indeed, the court held that a jury finding that the settlement was worse than surrender could alone support a judgment that the union had acted arbitrarily and irrationally. This holding unduly constrains the "wide range of reasonableness," within which unions may act without breaching their fair representation duty. 499 U.S. at 78-79.
The case of Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138
(2d Cir. 1994), illustrates the type of conduct which has been held to constitute a breach of the duty of fair representation under O'Neil. In Lewis two dairy processing plants were consolidated by a new owner. The workers at both plants were represented by the same union. The union president told the workers in the smaller plant that their jobs were secure because the seniority lists of the workers of both plants would be merged. However, he secretly entered into a contrary agreement with the workers of the larger plant because he believed that the votes of those workers were necessary to ensure his reelection as the union president. When other union representatives of the workers at the small plant submitted a proposal that the seniority lists be merged, the union president failed to submit that proposal to the union's executive committee. As a result of that failure, and the president's secret agreement, many workers at the smaller plant lost their jobs. The Court held that the union president had acted in bad faith, and willfully misrepresented and concealed information from the union members.
Under the law of the State of Connecticut a union member has no cause of action whatsoever for breach of duty of fair representation unless the employer has breached the collective CT Page 2458 bargaining agreement. Mastro v. Board of Education, supra, at 487-488. A union may properly decline to support a meritorious claim of one of its members without breaching the duty of fair representation because the union's interest in representing all of its members is not always identical or even compatible with the individual interests of one member or group of members.Genovese v. Gallo Wine Merchants, Inc., supra, at 488. The union may decide to maximize the rights and benefits of a group of members rather than to achieve the best possible outcome for an individual employee in a particular case. Id. A claim for breach of the duty of fair representation must be viewed in the context of labor relations. The whole process of collective bargaining is one of give and take — of compromise. In the course of this process, each side often yields to a demand of the other so that the particular result is disadvantageous to the party who yields. If a union breached its duty of fair representation to the union members every time it made a concession, collective bargaining would be impossible. Conn. Education Assn. v. State Board ofLabor Relations, supra, at 275.
Based on Requests to Charge submitted by the plaintiffs the court charged the jury incorrectly in two areas material to this Motion to Set Aside the Verdict. First, the court charged that the Union could be found to have breached the duty of fair representation even if the CBA did not give the plaintiffs the right to use military time to hasten their retirement. This was incorrect. In order to prove a breach of the duty of fair representation, particularly where, as in this case, the plaintiffs have plead a violation of the CBA, the plaintiffs must prove that violation as a prerequisite to establishing a breach of duty of fair representation. Mastro v. Board of Education,
supra.
The plaintiffs have plead that the 1987 CBA gave them the right to use their military time to hasten retirement. They cannot establish that the Union violated its duty of fair representation if the CBA did not give them that right. seeMastro v. Board of Education, supra.
Other than the CBA itself, the only evidence produced by the plaintiffs at trial to support their claim that the CBA allowed them to use their military time to hasten retirement were statements by various plaintiffs that many months after the execution of the CBA various Union representatives told them that they could retire early by purchasing their military time. CT Page 2459
 The intention of the parties to a contract is to be determined from the language used interpreted in light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used. Ives v. Willimantic, 121 Conn. 408, 411, 185 A.2d 427
(1936).
The intention of the parties is to be ascertained by a fair and reasonable construction of the written words used, based upon common, natural, and ordinary meaning. Sturman v. Socha,191 Conn. 1, 10, 463 A.2d 527 (1983). The question is not the intent that existed in the minds of the parties, but the intent as expressed in the language used. Tomlinson v. Board of Education,226 Conn. 704, 722, 629 A.2d 333 (1993); White Oak Corp v. State,170 Conn. 434, 439, 365 A.2d 1162 (1976). Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. Bank of Boston Conn. v. Schlesinger, 220 Conn. 152, 158,595 A.2d 872 (1991). In this case, if the CBA contained definitive contract language, then the statements made by Union officials after the CBA was executed were irrelevant to prove the terms of the CBA.
The pertinent portion of the CBA, more fully set forth above, provides that
 An employee may purchase up to four (4) years of Military Service time . . . . The period of such service for which the employee receives credit shall be counted for the purpose of computing the amount of his or her retirement allowance. . . . (emphasis added).
From the foregoing language it is clear that military service time can be used to increase the amount of a pension, but not the number of years necessary to reach normal retirement. Moreover, the same section of the CBA provides that
 Normal retirement for employees hired before July 1, 1984 shall be after twenty years of continuous service.
That portion of the CBA could easily have been amended to reflect a reduction in the required twenty year period due to the CT Page 2460 use of military time, if such use had been intended.
Even if the plaintiffs were not required to prove a breach of the CBA, there was no evidence from which the jury could have found that the Union engaged in conduct which was, in the light of the circumstances existing at the time, so far outside a wide range of reasonableness as to be irrational as required byO'Neil. The plaintiffs presented no evidence that the Union failed to act honestly, in good faith and without hostility or arbitrary discrimination.
The evidence of the Union's alleged breach of the duty of fair representation consisted almost entirely of the claims by various plaintiffs that various Union officials advised them that they could use their military time up front. However, misrepresentations as to the meaning of a collective bargaining agreement, absent evidence of bad faith or dishonesty as that present in Lewis, do not constitute a breach of the duty of fair representation. Humphrey v. Moore, supra; Reed v. Int'l. Union ofUAW, 945 F.2d 198 (7th Cir. 1991).
In both Humphrey and Reed union officials told union members that they were entitled to certain benefits, and, thereafter, reversed position. In Reed, the union adopted one position in a writing distributed to its membership and later refused to pursue a grievance based upon the position it had previously adopted in the writing. The court granted the union's motion for summary judgment, finding that the union's adoption of a position contrary to one it had previously communicated to the membership was not enough to constitute a breach of the duty of fair representation.
Even if the evidence is construed in a manner most favorable to the plaintiffs, as it must be on a motion to set aside a verdict, the representations of Union officials that the plaintiffs could use their military time to effect an early retirement do not form a sufficient basis upon the jury could have found that the Union breached a duty of fair representation. There was no evidence that those representations were made in bad faith as they were in Lewis. Unlike the union members in Lewis,
who did not seek new employment in reliance on the union president's misrepresentation that their jobs were secure, Labbe did not rely on the Union's representation that he could retire early by using his military time. To the contrary, at the time he retired he was aware of the clearly expressed Union and City CT Page 2461 position that military service time could not be used to hasten retirement. Labbe chose to ignore that position, and instead, relied on the advice of his lawyer as the basis for his decision to retire early.
At trial and in their memoranda in opposition to the Motion to Set Aside the Verdict, but not in their complaint, the plaintiffs have taken the position that if the CBA did not explicitly provide the plaintiffs with the right to purchase military time and use it "up front," then it implicitly provided them with that right, and the Union breached the duty of fair representation when it "bargained away" that implicit right in the August, 1988 Agreement. In order for the Union's conduct with respect to the Agreement to have constituted a breach of the duty of fair representation, that conduct had to be judged based on the circumstances that existed at the time and had to be so far outside "a wide range of reasonableness" as to be irrational. seeAirline Pilots Association v. O'Neil, supra.
In August, 1988 the Union had succeeded in removing a minimum retirement age from the CBA. Thus, if an officer had joined the police force at age twenty and served as a police officer for twenty years with the city of Hartford, he could retire with a full pension at age forty. Given the lack of any minimum retirement age in the new CBA, the Union leaders believed that it was highly unlikely that the City would agree to allow the use of military time to hasten retirement date. They also believed that the ability to use each year of military time to increase pension amount by 2.65% of final average pay was an important benefit for all union members, and further believed that that amount had been negotiated, but left out of the CBA. In light of the foregoing, as a matter of law, the Union's conduct was not so far outside a wide range of reasonableness as to be irrational.
The second area on which the court incorrectly charged the jury in reliance on law provided by the plaintiffs pertained to the relationship between the breach of union by-laws and the breach of the duty of fair representation. The plaintiffs provided the court with the following four cases as authority for their assertion that a breach of union by-laws alone can constitute a breach of the duty of fair representation. Woodellv. IBEW Local 71, ___ U.S. ___, 112 S.Ct. 494, 116 L.Ed.2d 419
(1991); Shea v. McCarthy, 953 F.2d 29 (2d Cir. 1992); Phelan v.Local 305, 973 F.2d 1050 (2d Cir. 1992); Lewis v. Tuscan DairyFarms, supra. Upon careful review of foregoing cases, the court CT Page 2462 now finds that that assertion was a misstatement of the law. Neither Woodell, nor Shea implicated the breach of duty of fair representation at all. Phelan addressed the issue of statute of limitations with respect to claims by a union member against his union. Although Lewis did mention a violation of the union's by-laws, it did not hold that a breach of a union by-laws may, in and of itself, constitute a breach of the duty of fair representation. In Lewis the union president's breach of the union by-laws was only one of many factors which the court considered in determining that the union president had breached the duty of fair representation. At best, Lewis can accurately be described as holding that a breach of union by-laws may constitute evidence of a breach of the duty of fair representation when coupled with a union's bad faith or malicious conduct. The court's charge to the jury that a breach of union by-laws may constitute a breach of the duty of fair representation was incorrect.
The plaintiffs claimed that the Union's entry into the August 5, 1988 Agreement violated Article XIII of the Union By-Laws because the Agreement constituted a collective bargaining agreement which should have been voted on by the union membership. Article XIII provides:
 Proposed collective bargaining agreements and the modifications thereof shall be negotiated by the President and by a negotiating committee designated by the President. Any proposed collective bargaining agreements shall be presented in writing to the membership at a special meeting of the membership held at least three (3) days prior to a vote of the membership on acceptance of the proposed collective bargaining agreement. Nothing contained in this section shall preclude the President or Executive Board from seeking to improve the benefits under any existing collective bargaining agreement.
The Agreement was not a collective bargaining agreement. At best it was a "modification," which did not require approval by the membership. The Union took the position that it was a clarification and fell under the last sentence of Article XIII. The court agrees. In entering into the Agreement, the Union was seeking to add a term that was, apparently, inadvertently omitted from the CBA and to clarify that the CBA did not allow use of military service time to hasten retirement date. Therefore, it CT Page 2463 was both an improvement of the benefits under the existing CBA and a clarification of the CBA.
Even if the foregoing interpretation of Article XIII is incorrect, there was still insufficient evidence to permit the jury to find in favor of the plaintiffs on the Seventh Count of the complaint, which alleged a breach of the Union by-laws. There was no evidence whatsoever that any plaintiff suffered any damages as a result of the violation of the by-laws. The jury apparently recognized this when it awarded one dollar to each plaintiff on the Seventh Count of the complaint.
A union's constitution or by-laws form a binding contract between the union and its members, Scofield v. NLRB,394 U.S. 423, 426, 89 S.Ct. 1154, 1156, 22 L.Ed.2d 385 (1965);International Association of Machinists v. Gonzales, 356 U.S. 617,618, 78 S.Ct. 923, 924, 2 L.Ed.2d 617 (1958).
To be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach. Where the damages claimed are remote from the breach complained of and the causal connection is wholly conjectural, there can be no recovery. West Haven SoundDevelopment Corp. v. West Haven, 207 Conn. 308, 313-14,541 A.2d 858 (1988); Calig v. Schrank, 179 Conn. 283, 286, 426 A.2d 274
(1976); see also J. Calamari J. Perillo, Contracts (1987) 14.4, pp. 591-92; D. Dobbs, Remedies (1973) 12.3, pp. 798-803; 3 Restatement (Second), Contracts 346, 347.
In summary, the evidence presented fails to establish the liability of the defendant on the Sixth Count of the complaint, which alleges a breach of the duty of fair representation for the following reasons. First, in the factual and procedural context of this case the plaintiffs had to prove that the CBA gave them the right to use their military time to hasten retirement and that the City breached that provision of the CBA. This court has found that the evidence was insufficient to permit the jury find that there was any breach of the CBA because the CBA did not contain any provision whereby the union members could use their military service time to hasten their retirement date. Second, there was no evidence upon which the jury could reasonably base a conclusion that the Union's entry into the August, 1988 Agreement was a breach of the duty of fair representation. There was no evidence that the Union acted with hostility or in bad faith and no evidence that under the circumstances existing at the time, CT Page 2464 the Union's conduct was so far outside a wide range of reasonableness as to be irrational. Finally, to the extent the jury based its verdict for the plaintiffs on the Sixth Count on its finding that the Union breached its own by-laws with respect to the August, 1988 Agreement, such a verdict was contrary to the law because a breach of union by-laws alone is insufficient to constitute a breach of the duty of fair representation. Based on the foregoing, the verdict in favor of the plaintiffs on the Sixth Count is set aside and judgment is hereby entered in favor of the defendant.
The verdict in favor of the plaintiffs on the Seventh Count is set aside and judgment may enter in favor of the defendant based on the court's finding that as a matter of law the Union did not violate its by-laws and there was no evidence that any plaintiff was damaged by the alleged violation.
By the Court,
Aurigemma, J.