MICHAEL J. LASALLA v. DOCTOR'S
ASSOCIATES, INC.
(SC 17483)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 7—officially released June 13, 2006

*Aaron S. Bayer*, with whom were *Erika L. Amarante* and *Marianne Sadowski*, for the appellant (defendant).

*Raymond A. Garcia*, with whom was *Nicole Liguori Micklich*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The principal issue in this appeal is whether a voluntary arbitration panel is bound to apply the doctrine of claim preclusion to a second arbitration claim involving the interpretation of the same provision of a contract between the same parties. The defendant, Doctor's Associates, Inc., appeals[1] from the judgment of the trial court confirming an arbitration award in favor of the plaintiff, Michael J. LaSalla, and denying the defendant's application to vacate the award. The defendant claims that the award: (1) violated public policy; and (2) was issued in manifest disregard of the law. We disagree and, accordingly, we affirm the judgment of the trial court.

The parties entered into a voluntary, unrestricted arbitration proceeding. The arbitration panel ruled in favor of the plaintiff. The plaintiff applied to the trial court to confirm the award, and the defendant applied to vacate the award. The trial court rendered judgment granting the plaintiff's application to confirm and denying the defendant's application to vacate the award. This appeal followed.

Certain of the facts, and the following procedural history, are undisputed. The defendant is a franchiser of Subway sandwich shops that contracts with development agents, who, in turn, develop and support Subway stores in particular areas. On February 1, 1986, the plaintiff and the defendant entered into a development

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

agent agreement pursuant to which the plaintiff became a development agent for northwestern Florida (plaintiff's territory), and the defendant agreed to pay to the plaintiff one third of the royalties and transfer fees that it receives from the Subway stores located in the plaintiff's territory, subject, however, to a reduction based on a modifier. Because, prior to the execution of the agreement, there were already twenty-nine Subway stores in the plaintiff's territory, the modifier was designed to reduce the payments from the defendant to the plaintiff to reflect those previously established stores.[2]

The agreement has a broad, unrestricted arbitration clause, requiring that "any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the Commercial Rules of the American Arbitration Association . . . ." In 1998, the plaintiff filed a claim for arbitration before the American Arbitration Association (1998 arbitration) regarding several matters in dispute between the parties under the agreement. Among the items in dispute was the interpretation of the modifier as applied to stores that were in existence at the time of the execution of the agreement, but that subsequently

[2] Specifically, the modifier provides as follows: "[F]or Subway units established in the Territory prior to the execution of the Agreement, payment to the Development Agent [namely, the plaintiff] will be reduced to reflect the efforts of the Company [namely, the defendant] in establishing those units. All units operating at the time the contract is executed shall be counted as four. Royalties from the Territory shall be calculated by multiplying the collected royalties from the Territory by a fraction, the numerator of which shall be the net number of units added in the Territory by the [plaintiff] after date of this Agreement plus [four] and the denominator shall be the total number of units in the Territory." (Internal quotation marks omitted.) Thus, all other things being equal, the larger the denominator of the fraction, the smaller the payout from the defendant to the plaintiff and, conversely, the smaller the denominator of the fraction, the larger the payout from the defendant to the plaintiff.

were " 'permanently closed' . . . ."[3] The plaintiff presented the arbitrators in that proceeding with an exhibit indicating that, of the twenty-nine stores in existence on February 1, 1986, six had been permanently closed and nine had been relocated. On the basis of this exhibit, the plaintiff claimed that the denominator of the modifier should be reduced by the six permanently closed stores[4] and, therefore, the calculation of the modifier that the defendant had been using should be changed to reflect the larger figure claimed by the plaintiff. In this connection, moreover, although the plaintiff sought money damages with respect to his other claims in the arbitration, as to the modifier issue he sought only a declaration of the modifier's proper interpretation and application, not money damages.

The panel in the 1998 arbitration agreed with the plaintiff, and, in an award dated June 14, 2000, declared: "The denominator of the modifier . . . shall be reduced for each store that was in place when the [agreement] was signed and thereafter permanently closed, so that the modifier will be determined in the manner suggested by [the plaintiff], reflected on [his exhibit, which chose a measurement date of January 30, 1999], that produces a modifier of 0.8642857, rather than in the manner suggested by [the defendant], that produces a modifier of 0.8214286." The plaintiff then applied to the Superior Court to vacate the panel's award, based upon two other issues in the arbitration upon which he had not prevailed. The defendant correspondingly applied to the court to confirm the award in

[3] The plaintiff defined a permanently closed store as one that was "no longer in business. The franchise has been retired." (Internal quotation marks omitted.)

[4] Put in the terms of the modifier; see footnote 2 of this opinion; the plaintiff's claim was that, in the definition of the denominator as "the total number of units in the Territory," the number of units was to be calculated by subtracting six therefrom, leading to a larger payout from the defendant to the plaintiff.

its entirety. In June, 2002, the trial court, *Alander, J.*, denied the plaintiff's application to vacate and granted the defendant's application to confirm the award. The plaintiff did not appeal further.

In November, 2002, the plaintiff filed the arbitration claim that is involved in the present case before the American Dispute Resolution Center.[5] In his prayer for relief, the plaintiff sought "the enforcement of" the agreement and of the award in the 1998 arbitration. He stated that the award in the 1998 arbitration "provided relief to [him] in the form of a declaration of certain rights that arise under the [agreement]. Based on that declaration, [the plaintiff] now seeks an award of money damages, legal fees, interest and cost of this arbitration." He quoted the award in the 1998 arbitration regarding the modifier. He claimed that, since February 1, 1986, when the agreement was executed, until the award in the 1998 arbitration, the defendant had underpaid the plaintiff in breach of the agreement. He stated that, "[b]ased on the [award in the 1998 arbitration], it is now clear that the [m]odifier clause should have been interpreted to be flexible and subject to adjustment, taking into consideration the criteria set forth in the [agreement]," and that as a result of the defendant's "misapplication of the [m]odifier, [the plaintiff] has been underpaid for [fourteen] years." He stated, further, that, even after the 1998 arbitration, the defendant "has refused to make good on the unpaid balance in conformity with the [a]ward [in the 1998 arbitration]," and that the defendant had taken the position that "the panel's interpretation of the [m]odifier only applies prospectively, from the date of the [a]ward forward." Finally, the plaintiff sought "an appropriate award of money damages," and "a declaration that the determina-

---

[5] The parties had agreed that this arbitration proceeding would be instituted before the American Dispute Resolution Center, rather than the American Arbitration Association.

tion of the net number of units added to the [t]erritory is governed by the contractual definition of the term 'unit' so that in the future, the parties will be able to conduct business without further disputes on the application of this clause. For this purpose, a 'unit' should be taken out of the [m]odifier calculation when it closes at one location and ceases operations at that location, as described in the [agreement]."

The defendant moved the arbitration panel to dismiss the arbitration demand on the grounds of, among other things,[6] res judicata, or claim preclusion. The defendant presented a brief to the panel, fully explaining the factual background of the dispute between the parties, the ruling in the 1998 arbitration, the ruling of the court confirming that award, and the legal bases for its motion. In response, the plaintiff filed an objection to the motion, presenting his factual and legal arguments in favor of continuing the arbitration. The panel denied the motion to dismiss.

Ultimately, the panel issued two interim awards and a final award. The substance of the awards was as follows: (1) the award in the 1998 arbitration was retroactive to the execution of the agreement, but damages would be recoverable by the plaintiff "only from June 15, 1992";[7] (2) for purposes of determining the numerator and denominator of the modifier, only units paying a royalty were to be considered a " 'unit' "; (3) for purposes of calculating the denominator of the modifier,

---

[6] The defendant also presented, as bases for its motion to dismiss, the doctrine of collateral estoppel, or issue preclusion, and the doctrine of judicial estoppel, which is a federally recognized doctrine that precludes a party from asserting a factual position in a legal proceeding that is contrary to a position taken previously by that party in a prior legal proceeding. The doctrine of judicial estoppel is not involved in this appeal, and the doctrine of collateral estoppel is not involved except insofar as we discuss it in part I of this opinion.

[7] Neither party specifically questioned the propriety of this date, either in the trial court or in this court.

a " 'permanently closed' " unit was to be determined on a case-by-case basis, considering a number of factors;[8] (4) nine relocated stores affected the modifier, resulting in a modifier as of January 30, 1999, of 0.90714;[9] and (5) the plaintiff was entitled to damages in the amount of $1,096,011 and interest to the date of the award in the amount of $608,434.

The defendant applied to vacate, and the plaintiff applied to confirm the award. The trial court, *Stevens, J.*, rejected the defendant's claims that the award violated the public policy of claim preclusion, and that the award's treatment of the doctrine of claim preclusion and its award of interest were in manifest disregard for the law. Accordingly, because it was an unrestricted submission and the award was within the submission, the court confirmed the award.

I

The defendant does not take issue with the propositions that a voluntary arbitration award issued pursuant to an unrestricted submission must be confirmed so long as the award is within the submission, and that, in the absence of an applicable exception to this rule in the present case, this award meets that standard.

[8] The factors listed by the panel included the following: whether the original franchisee owned and operated the unit; how long the location had not been paying a royalty; the original and present location of the unit; the extent to which the defendant was instrumental in establishing the existing unit; and whether a franchise or transfer fee was paid, and whether the defendant received any portion thereof.

[9] Although the awards do not specifically reference either the date of January 30, 1999, as the measurement date, or the specific figure of 0.90714 as the modifier, the defendant asserts in its brief that these were part of the awards, and the plaintiff does not take issue with this assertion. The award in the 1998 arbitration based its calculation of the modifier on plaintiff's exhibit 123, which used January 30, 1999, as the measurement date. We therefore assume for purposes of this appeal that the award in this case differed from the award in the 1998 arbitration, in arriving at a different modifier, 0.90714 rather than 0.8642857.

The defendant relies on the public policy exception to that rule, namely, that such an award nonetheless must be vacated if it "would violate some explicit public policy that is well defined and dominant . . . ." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 655, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005). Specifically, the defendant claims that the award violates the explicit, well-defined and dominant policy of claim preclusion, and the corresponding explicit, well-defined and dominant policy of the finality and binding nature of arbitration proceedings. Thus, the defendant argues, because the award in the present case arrived at a different calculation of the modifier from that arrived at in the 1998 arbitration, and because it permitted the plaintiff to raise and prevail on a claim that he could have but did not make in that earlier arbitration, namely, his claim for damages, it violated these policies and must be vacated. We are not persuaded.

We agree with the defendant that the proper scope of review, in both the trial court and this court, for a colorable claim that an award violated public policy is plenary. Id. Thus, we need not consider the defendant's claim that the trial court applied an improper scope of review, because we apply the proper one.

We next note that, to the extent that the defendant's public policy claim rests on its claim that this award conflicts with the award in the 1998 arbitration regarding the interpretation of the modifier, and its calculation and application to permanently closed stores, that claim is foreclosed by our decision in *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 728 A.2d 1063 (1999). In *Stratford*, we squarely held that "as a matter of public policy, arbitrators are not required to give collateral estoppel effect

to prior arbitral awards," even where the prior award involves "the interpretation of the same provision of a contract between the same parties." Id., 109. We explained that collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact[10] has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (Citation omitted; internal quotation marks omitted.) Id., 117. We recognized that whether a subsequent arbitral panel must, as a matter of public policy, be bound by a determination on the same question of a prior panel presented "a conflict between two competing policy considerations: (1) the desire to promote stability and finality of judgments, and the closely related interest of judicial economy; and (2) the desire to maintain the flexibility of the arbitral process." Id. We concluded that, "in the absence of a specific contract provision to the contrary, an arbitrator is not bound to follow prior arbitration decisions, even in cases in which the grievances at issue involve the same parties and interpretation of the same contract provisions. Although an arbitrator may find well reasoned prior awards to be a compelling influence on his or her decision-making process, the arbitrator need not give such awards preclusive effect. Rather, the arbitrator should bring his or her own independent judgment to bear on the issue to be decided, using prior awards

---

[10] Although in *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 248 Conn. 117, we referred to issue preclusion as limited to "an issue of ultimate *fact*"; (emphasis added); that limitation was something of a misstatement. "Issue preclusion applies if 'an issue of fact *or law* is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment . . . .' 1 Restatement (Second), Judgments § 27 (1982)." (Emphasis added.) *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992).

as the arbitrator sees fit, as it is the arbitrator's judgment for which the parties had bargained." Id., 125.

Our reasoning in reaching this conclusion was as follows. First, we noted the overwhelming precedent in the federal courts reaching the same conclusion. Id., 118–20. Second, because arbitration is a creature of contract, and because it is the agreement that limits the powers of the arbitrators, "the parties are free to bargain for whatever terms they choose, including a provision establishing a system of arbitral precedent." Id., 121. Thus, in the absence of such a provision, "arbitrators are free to attach to prior awards whatever precedential value they deem appropriate." Id. Third, even when, as is ordinarily the case, the agreement provides that the arbitration shall be "final and binding," that language does not mandate the application of collateral estoppel in any given case. Id., 123–24. The "scope of such a phrase is determined by each arbitrator in turn." Id., 124. Finally, because of the ordinarily single tiered nature of arbitration and the very limited scope of judicial review of arbitration awards, it is "all the more important that arbitrators be afforded the greatest opportunity to render correct decisions. Allowing arbitrators the flexibility to follow arbitral precedent where they deem appropriate, but to disregard it when they conclude otherwise, creates an informal system of checks and balances in the arbitral process and thus helps to ensure that arbitration proceedings result in just dispositions." Id.

Part of the defendant's claim in the present case is nothing more than a recast of what we squarely rejected in *Stratford*. The defendant claims that the arbitrators in this case were required to follow the award in the 1998 arbitration in their interpretation and calculation of the modifier, and in its application to the facts of the case. Specifically, the defendant cites the following examples of how the award violated public policy: arriv-

ing at a different number of units in the denominator; arriving at a different method of calculation of the modifier, namely, the multifactor method of determining the number of units, which was not present in the award in the 1998 arbitration; and arriving at a wholly different modifier, namely, 0.90714, rather than 0.8648257. These contentions fall squarely within our holding in *Stratford* and the reasoning supporting it: public policy did not require the panel in this proceeding to make the same determinations arrived at in the 1998 arbitration. Furthermore, as we anticipated in *Stratford*, the panel in the present case was requested to, and could have, applied the doctrine of issue preclusion if it determined that to be the more appropriate course. It declined to do so, and that decision cannot be disturbed by the court. Id., 124–25.

We turn, therefore, to the aspect of the defendant's claim that we have not squarely decided, namely, that the doctrine of claim preclusion should be imposed in voluntary arbitration as a matter of public policy. Put another way, the defendant claims that an award that does not follow the doctrine of claim preclusion violates an explicit, well-defined and dominant public policy, and, specifically, that this award, by permitting the plaintiff to recover monetary damages that he did not seek to recover in the 1998 arbitration, violated that public policy. We disagree. We conclude that the public policy exception does not require that arbitrators in a second arbitration between the same parties, involving interpretation and application of the same contractual provision, apply the doctrine of claim preclusion.

"Claim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985). The

concepts of issue preclusion and claim preclusion are simply related ideas on a continuum, differentiated, perhaps by their breadth, and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . . Id., 464–65.

"The subtle difference between claim preclusion and issue preclusion has been so described: [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988), quoting *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 401–402, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989). Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986), quoting 1 Restatement (Second), Judgments § 24 (1) (1982). Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or *might have been made. Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973)." (Emphasis added; internal quotation marks omitted.) *Scalzo* v. *Danbury*, 224 Conn. 124, 127–28, 617 A.2d 440 (1992).

Thus, if the doctrine of claim preclusion were required to be applied to the present case, the plaintiff would have been barred from seeking damages in the present arbitration because he could have done so, but did not do so, in the 1998 arbitration. We decline to impose such a limitation on the scope of consensual

arbitration. In contrast, we see no valid reason to distinguish between the closely related doctrines of issue preclusion and claim preclusion in this regard.

Put simply, much of the reasoning that undergirded our decision in *Stratford* to decline to impose issue preclusion on the arbitral process applies to claim preclusion as well. In the absence of a specific contractual provision governing the issue, for which the parties are certainly free to bargain, arbitrators are not required to apply claim preclusion; rather, they are free to apply or to reject the doctrine to the extent that they deem it appropriate because the parties have bargained for their judgment. Furthermore, the fact that, as in the present case, the agreement provides that the arbitration shall be "final and binding," does not require the application of the doctrine. The meaning and scope of that phrase is determined by each arbitrator in turn. In addition, given the nature of arbitration and the limited scope of judicial review, arbitrators should be given the maximum opportunity to render correct and just decisions.

Finally, another consideration makes the doctrine of claim preclusion an even less likely candidate for the public policy exception than issue preclusion. Arbitration is often the dispute resolution method of choice between contracting parties who, because of the nature of the contract, must deal with each other in an ongoing business relationship for a lengthy period of time. Indeed, the agreement between the plaintiff and the defendant presents precisely such a case. Applying the doctrine of claim preclusion as a matter of public policy to such agreements would require the party who seeks arbitration on a particular matter for the first time to bring forth, not only the particular claim or form of relief that he seeks to have resolved at the time, but any and all other related claims or forms of relief that he *could* then bring, even if he anticipates or hopes that

it may not be necessary and that the related claims or forms of relief are likely to be worked out amicably between the parties.[11] This could force the complaining party to inject a needless source of tension into the business relationship.[12] This risk further supports our conclusion that the public policy exception does not require the imposition of the doctrine of claim preclusion to a prior arbitration award.

The defendant contends, however, that the arbitration statutes, namely, General Statutes §§ 52-408 through 52-424, "articulate the explicit, well-defined, and dominant public policy that arbitration awards are final and binding and have the same effect between the parties as a civil judgment." Thus, the defendant relies on the following statutory provisions: the court's judgment regarding an award "shall have the same force and effect" as a civil judgment; General Statutes § 52-421 (b);[13] the strict procedures, standards and time lim-

[11] Indeed, in the present case, the plaintiff claimed that, before the 1998 arbitration, both he and the defendant anticipated that, after that arbitration was resolved, the parties would apply the panel's interpretation mathematically; it was only thereafter, when the defendant took the position that the panel's interpretation had only prospective effect, that the second arbitration became necessary.

[12] We recognize that the same problem could arise under a contract that does not have an arbitration clause; in such a case, the doctrine of claim preclusion would apply to lawsuits. The law imposes the doctrine in that situation because of the overriding policy in favor of conserving judicial resources. That policy does not have the same force, however, in the arbitration context.

[13] General Statutes § 52-421 (b) provides: "The judgment or decree confirming, modifying or correcting an award shall be docketed as if it were rendered in a civil action. The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action; and it may be enforced as if it had been rendered in a civil action in the court in which it is entered. When the award requires the performance of any other act than the payment of money, the court or judge entering the judgment or decree may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees."

its for confirming an award; General Statutes § 52-417;[14] the procedural requirements for vacating an award; General Statutes § 52-418 (a);[15] and procedures for modifying or correcting an award. General Statutes § 52-419 (a).[16] The defendant argues that these "statutory procedures reflect the strong public policy that arbitration awards are final and binding, and that a dissatisfied party who ignores these provisions may not later collaterally attack a final award." We agree that, in general,

[14] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[15] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[16] General Statutes § 52-419 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

these provisions express a policy in favor of the final and binding nature of arbitration awards. We disagree with the defendant, however, that the policy they express is so powerful that it overrides the other considerations that, as we concluded in *Stratford* and we conclude in the context of the present case, leave to the arbitrators the decision of whether to apply the doctrines of issue and claim preclusion to prior arbitral awards.

The defendant also contends that our decision in *Fink* v. *Golenbock*, 238 Conn. 183, 680 A.2d 1243 (1996), supports its position that an arbitral panel must, as a matter of public policy, apply the doctrine of claim preclusion to a prior arbitral award between the same parties and involving the same contractual provision.[17] We disagree.

In *Fink*, the plaintiff in a judicial lawsuit had brought a prior arbitration proceeding against one of the defen-

---

[17] The defendant also claims that courts in other jurisdictions have required arbitral panels to apply the doctrine of claim preclusion to prior arbitral decisions; see, e.g., *Byron's Construction Co.* v. *Dept. of Transportation*, 463 N.W.2d 660, 663 (N.D. 1990) (doctrine of claim preclusion barred party from raising issue in second arbitration proceeding that could have been raised in first arbitration); *Waterfront Marine Construction, Inc.* v. *North End 49ers Sandbridge Bulkhead Groups A, B and C*, 251 Va. 417, 434, 468 S.E.2d 894 (1996) (doctrine of claim preclusion barred second arbitration action because "even though the first demand described only specific defects, the doctrine of res judicata applies to all claims which could have been brought"); and, more specifically, have distinguished between issue preclusion and claim preclusion in requiring a subsequent arbitral panel to apply the doctrine of claim preclusion based upon a prior panel's determination. See, e.g., *Vandenberg* v. *Superior Court*, 21 Cal. 4th 815, 824 and n.2, 982 P.2d 229, 88 Cal. Rptr. 2d 366 (1999) (holding that prior arbitration has no collateral estoppel effect, absent agreement of parties, on subsequent arbitration, but noting that California precedent accords res judicata effect to serial arbitration proceedings); but see, e.g., *Chiron Corp.* v. *Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1128 (9th Cir. 2000) (issue of res judicata effect of prior arbitration on subsequent arbitration is decision for arbitrator, not court). We decline to follow the cases on which the defendant relies, however, for all of the reasons that we have stated.

dants. In the prior arbitration proceeding, the plaintiff had asserted claims that the particular defendant, Joan A. Magner, had breached her employment contract with the plaintiff. Id., 193. In the lawsuit, the plaintiff asserted tort claims of conversion, unjust enrichment, tortious interference with a business opportunity, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; arising out of the same employment relationship. *Fink* v. *Golenbock*, supra, 238 Conn. 193. We held that, in that procedural context, the doctrine of claim preclusion applied so as to bar the plaintiff from litigating the tort and CUTPA claims in the lawsuit because he could have but did not assert them in the prior arbitration proceeding. Id., 196–97. We reasoned: "The plaintiff had the opportunity to present and litigate fully these issues before the arbitration panel, but failed to do so. It would be a waste of judicial resources to permit litigation of these issues now. Given our strong commitment to the arbitration of disputes, especially when the parties have voluntarily agreed to arbitration, and in light of the broad language in the submission of the parties in this case, we conclude that the plaintiff could have litigated all the issues presently before us in the arbitration proceeding. Accordingly, these issues are barred by res judicata and the judgment against Magner must be set aside and a judgment must be rendered in her favor." Id., 197.

The difference between *Fink* and the present case is the difference between the application of the doctrine of claim preclusion by a court *in a judicial proceeding*, irrespective of whether the prior proceeding was an arbitral or judicial proceeding, and the application, in an arbitration proceeding, of the doctrine of claim preclusion by a subsequent arbitral panel to a prior arbitral award.[18] In the *former*, the policy of conservation of

---

[18] We recognize that there is broad language in *Fink*, on which the defendant relies, that read out of context could be seen as supporting the defen-

judicial resources counsels in favor of the application of the doctrine. In the latter, the reasons that we have already given counsel against the mandatory application of the doctrine. In that situation, whether to apply the doctrine is a question for the arbitrators.

II

The defendant also claims that the award was issued in manifest disregard of the law, in two respects: (1) the arbitration panel's recalculation of the modifier manifestly disregarded the law requiring that full force and effect be given to arbitral awards; and (2) the award of prejudgment interest was an egregious disregard of established law regarding prejudgment interest. We disagree.

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . .

"The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreci-

dant's interpretation of it. We note, however, that, as with any precedent, its language must be considered in the context of the precise question before the court. See *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 190, 896 A.2d 777 (2006).

ated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citation omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 95, 868 A.2d 47 (2005).

The defendant cannot meet its heavy burden under this standard. The reasons that we have given in support of our conclusion that the doctrine of claim preclusion is not required as a matter of public policy effectively dispose of the defendant's manifest disregard claim. Those persuasive reasons demonstrate that the arbitration panel's decision not to apply the doctrine to this arbitration proceeding was not patently irrational or an egregious disregard of applicable law.

Similarly, the defendant cannot prevail on his contention that the panel's award of interest was in manifest disregard of the law. At the judicial level, we have stated: "Pursuant to General Statutes § 37-3a, interest may be recovered in a civil action as damages for the detention of money after it becomes payable. We have construed the statute to make the allowance of interest depend upon whether the detention of the money is or is not wrongful under the circumstances. . . . The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court. . . . We have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was wrongful." (Citations omitted; internal quotation marks omitted.) *O'Hara* v. *State*, 218 Conn. 628, 643, 590 A.2d 948 (1991).

Gauged by this relaxed standard, the panel's award of interest was certainly not in manifest disregard of the law. The principal amount was liquidated; the panel

certainly could have considered the defendant's with-holding of the damages as wrongful and the plaintiff's claim for money damages as reasonably timely; and it was undisputed that the defendant had the use of the money for the disputed period of time.

The judgment is affirmed.

In this opinion the other justices concurred.