# GODFREY BURTON ET AL. *v.* CITY OF STAMFORD*

Superior Court, Judicial District of Stamford-Norwalk
File No. CV-03-0197324-S

Memorandum filed March 24, 2010

*Proceedings*

*William F. Gallagher*, for the plaintiffs.

*Kenneth B. Povodator*, assistant corporation counsel, and *Thomas M. Cassone*, corporation counsel, for the defendant.

BRAZZEL-MASSARO, J.

## FACTS

On October 2, 2003, the plaintiffs, Godfrey Burton and Peninah Burton, filed a complaint against the defendant,

---

* Affirmed. *Burton* v. *Stamford*, 127 Conn. App. 651, 18 A.3d 590 (2011).

the city of Stamford (Stamford). The plaintiffs allege that while operating Peninah Burton's vehicle, Godfrey Burton sustained injuries in a motor vehicle accident. The accident took place on October 11, 2002, between Godfrey Burton (Burton) and Officer James Grabinski (Grabinski). Grabinski is a member of the Stamford police department and was driving a city vehicle when the accident took place. The plaintiffs allege that Grabinski's negligence caused the injuries that Burton sustained in the accident. The plaintiffs further allege that Stamford is liable for the negligence of its employee and agent, Grabinski.

On February 4, 2004, Stamford filed a counterclaim and alleged that Burton's own negligence caused the accident. Stamford sought to recover for damage to the city vehicle caused by the accident. Meanwhile, the plaintiffs chose not to sue Grabinski individually.

In 2004, Grabinski commenced a separate action against Burton and sought compensation for the injuries Grabinski sustained in the accident. In that case, Stamford filed an intervening complaint. Subsequently, Burton and Grabinski agreed to arbitrate all claims for damages against Burton. This included the claims in Grabinski's action against Burton, as well as Stamford's counterclaim against Burton in the present case. In reliance on the agreement to arbitrate claims against Burton, Grabinski and Stamford withdrew their claims against Burton on November 8, 2005.

On April 24, 2006, the arbitration for all claims against Burton took place, and on May 19, 2006, the arbitrator issued a decision, which the court confirmed. In the arbitrator's decision, he stated: "[Burton] must bear the responsibility for this accident. Having just pulled out from the curb, it appears that he had ample opportunity to observe the police car and avoid the accident." The

arbitrator awarded Grabinski $45,125.77 in economic damages and $45,000 in noneconomic damages.

Concurrently, Burton's action against Stamford went to trial. On November 22, 2005, the trial court directed a verdict in Stamford's favor and stated the "[t]he plaintiff [has] not proved a case under [General Statutes] § 7-465 because [he] did not sue . . . Grabinski, nor can [he] proceed under General Statutes § 52-557n or any other statute abrogating governmental immunity because [he has] not amended [his] complaint." (Internal quotation marks omitted.) *Burton* v. *Stamford*, 115 Conn. App. 47, 52, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009). The court then denied the plaintiffs' request to amend their complaint. The plaintiff moved to set aside the directed verdict, and on November 17, 2006, the court set aside the verdict and ordered a new trial. Setting aside the verdict, the court stated that it had erred in denying the motion to amend the complaint. Stamford then appealed the decision to set aside the verdict and filed a number of motions with the trial court. Pursuant to the trial court motions and with the consent of the parties, the court vacated the order for a new trial and stated that it would decide the first part of the defendant's motion for a directed verdict, which alleged evidential insufficiency. On November 27, 2007, the court directed a verdict in favor of Stamford on the basis that there was insufficient evidence to conclude that Grabinski's negligence caused Burton's injuries. Burton appealed, and the Appellate Court held that the trial court improperly directed a verdict. The Appellate Court reversed the trial court and remanded for further proceedings, stating: "On the evidence presented in this case, a factual dispute exists as to whether Grabinski's failure to maintain a proper lookout and to take evasive action caused the plaintiff's injuries." Id., 88.

On September 29, 2009, Stamford filed a motion for summary judgment on the ground that this action is barred by the doctrine of collateral estoppel and a memorandum in support. Stamford attached an affidavit by Anastasios Savvaides, the attorney primarily responsible for the handling of the lawsuit brought by Grabinski against Burton, and a copy of the arbitration award, to the motion for summary judgment. The plaintiffs filed an opposition to the motion for summary judgment on November 7, 2009. The matter was heard at short calendar on February 1, 2010.

## DISCUSSION

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Provencher* v. *Enfield*, 284 Conn. 772, 790–91, 936 A.2d 625 (2007).

"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 10–11, 938 A.2d 576 (2008).

"The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) Id., 11.

"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." Practice Book § 17-45. "[B]efore a document may be considered by the court in support of a motion for summary judgment, 'there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . .' Conn. Code Evid. § 9-1 (a), commentary. Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to, a certified copy of a document or the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." *New Haven* v. *Pantani,* 89 Conn. App. 675, 679, 874 A.2d 849 (2005).

"[Practice Book § 17-46] sets forth three requirements necessary to permit the consideration of material

contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on personal knowledge; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit." (Internal quotation marks omitted.) *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 251, 654 A.2d 748 (1995). The court may consider not only the facts presented by the parties' affidavits and exhibits but also the "inferences which could be reasonably and logically drawn from them . . . ." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 381, 260 A.2d 596 (1969).

Stamford argues that the plaintiffs litigated the issue of responsibility for the motor vehicle accident during their arbitration proceedings, and the May 19, 2006 arbitration decision is entitled to preclusive effect under estoppel. In support of their motion, Stamford submitted as evidence a copy of the arbitration award with an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what Stamford claims it to be. The plaintiffs did not submit any evidence with their memorandum in opposition to the motion. In their memorandum in opposition to the motion for summary judgment, the plaintiffs claim that the voluntary, private arbitration in the companion case does not collaterally estop the present action. They counter that there is a general issue of material fact regarding the intent of the parties as to the preclusive effect of arbitration.

"Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment [is] the appropriate method for resolving a claim of res judicata." *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712, 627 A.2d 374 (1993). "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court,

and prevent wasteful relitigation." *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988). "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

"Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action." (Internal quotation marks omitted.) *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). The Connecticut Supreme Court has clarified that this includes arbitration awards, stating: "An arbitration award is accorded the benefits of the doctrine of res judicata in much the same manner as the judgment of a court." (Internal quotation marks omitted.) Id., 319. Further, "ordinarily a factual determination made in final and binding arbitration is entitled to preclusive effect." *Genovese* v. *Gallo Wine Merchants, Inc.*, 226 Conn. 475, 483, 628 A.2d 946 (1993).

"[O]ur Supreme Court has held that 'as a rule, the decision of an arbitration panel is binding as res judicata in a subsequent judicial proceeding.' *Haynes* v. *Yale New Haven Hospital*, 243 Conn. 17, 21 n.5, 699 A.2d 964 (1997). This rule applies 'especially in a case in which the [d]ecisions [of an arbitration panel] are made for a purpose similar to those of a court and in proceedings similar to judicial proceedings.' *Fink* v. *Golenbock*, 238 Conn. 183, 195, 680 A.2d 1243 (1996). '[A]n arbitration proceeding should [also] be given the effect of a judgment for the purposes of . . . collateral estoppel.' *Busconi* v. *Dighello*, 39 Conn. App. 753, 768, 668 A.2d 716 (1995), cert. denied, 236 Conn. 903, 670 A.2d 321

(1996). As our Appellate Court has explained, 'the doctrine of collateral estoppel bars [relitigating the issues] to the extent [that] they were already litigated in the arbitration proceedings.' Id., 769." *Murphy* v. *Metropolitan Property & Casualty Ins. Co.*, Superior Court, judicial district of Middlesex, Docket No. CV-07-5003333 (June 30, 2009) (*Burgdorff, J.*) (48 Conn. L. Rptr. 179).

Concerning the relitigation of claims that are the same, the Connecticut Supreme Court stated that "[t]he doctrine of res judicata, or claim preclusion [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, supra, 238 Conn. 191.

The Connecticut Supreme Court has also addressed the effect of res judicata on claims that are not identical. In *Fink* v. *Golenbock*, supra, 238 Conn. 183, the court stated: "We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) Id., 191–92.

The court stated: "Finally, we recognize that a decision whether to apply the doctrine of res judicata to

claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close . . . and the competing interest of the plaintiff in the vindication of a just claim. We have stated that res judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. . . . The conservation of judicial resources is of paramount importance . . . ." (Citation omitted; internal quotation marks omitted.) Id., 192–93.

In *Fink* v. *Golenbock*, supra, 238 Conn. 183, the plaintiff brought an action on behalf of a professional corporation in which the plaintiff owned 50 percent of the stock. Id., 185–86. The plaintiff alleged claims against the defendants for wrongful conversion of a corporation's assets, tortious interference with the corporation's reasonable business expectancies, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. *Fink* v. *Golenbock*, supra, 185. The defendant employee had an employment contract with the corporation which included an agreement to resolve all disputes arising under the agreement through arbitration. Id., 189. Prior to trial, one of the defendants and the plaintiff submitted to arbitration on the issue of whether the

defendant breached the agreement not to compete. Id. After the arbitration panel issued an award in favor of that defendant, the plaintiff continued to litigate his remaining claims against the defendant. Id., 190. After a jury trial and verdict for the plaintiff, both defendants appealed. Id., 185–86. The defendant who had submitted to arbitration with the plaintiff argued that the plaintiff's claims were barred by the doctrine of res judicata, and the Connecticut Supreme Court agreed. Id., 190–91.

*Fink* v. *Golenbock*, supra, 238 Conn. 183, is different from the present case in that in *Fink*, there was a clause in the defendant's employment contract agreeing to arbitrate all issues arising under the contract. Id., 189. Subsequently, the parties submitted to arbitration, and the plaintiff pursued only a fraction of the claims. Id. In that case, the plaintiff pursued the litigation of different causes of action than the claim that the parties had arbitrated. Id., 190. Thus, the court had to address whether the preclusive effect of arbitration would reach claims for wrongful conversion of a corporation's assets, tortious interference with the corporation's reasonable business expectations, unjust enrichment, and violations of the Connecticut Unfair Trade Practices Act when the parties had arbitrated on the issue of breach of contract. Id., 190–91. Accordingly, the court took the extra step of stating that "no one may be compelled to arbitrate a dispute outside the scope of the agreement, which constitutes the charter of the entire arbitration proceeding and defines and limits the issues to be decided by the arbitrators." (Internal quotation marks omitted.) Id., 195. Despite the different causes of action at issue, the court held that all of the claims were precluded because "all the plaintiff's claims were or could have been previously adjudicated in an arbitration proceeding . . . ." Id., 189.

The plaintiffs argue that the intent of the parties governs the preclusive effect of arbitration and that the

court's decision in *Fink* does not change that because there was an employment contract that required the plaintiff to bring all issues to arbitration. See id. On the contrary, the court's opinion in *Fink* evinces a continued commitment by the court to support the promotion of judicial economy and the prevention of inconsistent judgment through the doctrine of res judicata. Id. In *Fink*, the court addressed a situation in which the connection between the claim in the arbitration proceeding and the claims brought before the court was more attenuated than in the present case. Id. There, the court used the employment contract to allow the preclusive effect of the arbitration proceeding to extend "to all or any part of the transaction, or series of connected transactions . . . ." Id., 191. In the present case, it does not matter that there is no contract limiting or allowing the preclusive effect of arbitration because the issue before the court is the exact same issue that was before the arbitrator.

Both the Supreme Court and Appellate Court have stated that there is claim preclusion where the issue before the court was already decided in a prior arbitration proceeding. In the plaintiffs' complaint, the plaintiffs argue that Grabinski's negligence caused the injuries Burton sustained in the accident and that Stamford was liable for that negligence. In Stamford's counterclaim, which was submitted to arbitration, Stamford alleged that Burton's own negligence caused the accident. The issue in both cases is the question of liability, and in the present case, the parties agreed to arbitrate the issue of liability.

The Connecticut Supreme Court has outlined several situations in which an arbitration decision is not given preclusive effect. The first situation occurs when there is a statute indicating that the specific cause of action cannot be lost. For example, in *Genovese* v. *Gallo Wine Merchants, Inc.*, supra, 226 Conn. 475, a plaintiff

employee sought damages from a defendant employer after the defendant terminated the plaintiff's employment, allegedly in response to the plaintiff's filing a claim for benefits. The plaintiff argued that General Statutes § 31-290a prohibits discrimination against employees for filing workers' compensation claims. Id. The defendant moved for summary judgment and argued that the doctrine of collateral estoppel precluded the action because the plaintiff already submitted a claim to arbitration under a collective bargaining agreement. Id. After the trial court granted the motion, the Supreme Court reversed the decision. Id. Because this case concerned an employee's statutory rights, the court looked at the intent of the legislature. Id. In its decision, the court noted that "[General Statutes § 31-51bb] provides that a cause of action arising under the state or federal constitution or state statute cannot be lost solely because the employee is covered by a collective bargaining agreement." Id., 481. The court found that "the legislature intended that such an adverse determination should not have preclusive effect." Id., 484. Because there was a statute disallowing the loss of the cause of action, the court held that the prior arbitration did not have a preclusive effect. Id.

The courts have also found that an arbitration agreement does not have preclusive effect against future proceedings when there is no contract provision concerning arbitral precedent and the future proceeding is another demand for arbitration. In *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 898 A.2d 803 (2006), a plaintiff entered into an agreement to develop some of the defendant franchisor's franchises. Subsequently, the plaintiff filed a demand for arbitration in order to obtain a declaration on the interpretation of terms related to his compensation. Id. The arbitration panel entered an award in the plaintiff's favor, which the trial court confirmed. Id. Several years later, the

plaintiff filed another demand for arbitration to enforce the parties' agreement, and the arbitration panel entered another award in the plaintiff's favor. Id. The trial court granted the plaintiff's application to confirm the award, and the defendant appealed on the ground that it was barred by the doctrine of collateral estoppel. Id. The court stated, "[w]e conclude that the public policy exception does not require that arbitrators in a second arbitration between the same parties, involving interpretation and application of the same contractual provision, apply the doctrine of claim preclusion." Id., 589.

Distinguishing the case from *Fink* v. *Golenbock*, supra, 238 Conn. 183, the court stated: "The difference between *Fink* and the present case is the difference between the application of the doctrine of claim preclusion by a court in a judicial proceeding, irrespective of whether the prior proceeding was an arbitral or judicial proceeding, and the application, in an arbitration proceeding, of the doctrine of claim preclusion by a subsequent arbitral panel to a prior arbitral award. In the former, the policy of conservation of judicial resources counsels in favor of the application of the doctrine." *LaSalla* v. *Doctor's Associates, Inc.*, supra, 278 Conn. 595–96.

In the present case, the plaintiffs rely on *LaSalla* v. *Doctor's Associates, Inc.*, supra, 278 Conn. 578, to argue that collateral estoppel in arbitration is governed by the intent of the parties; however, *LaSalla* v. *Doctor's Associates, Inc.*, supra, 578, addressed the effect of prior arbitration proceedings on subsequent arbitration proceedings. See id. The court specifically distinguished between cases in which the second proceeding is an arbitration proceeding and cases in which the second proceeding is a judicial proceeding. In the former case, the intent of the parties dictates the preclusive effect of an arbitration proceeding. In the latter case, it is the

purview of the courts to decide whether an arbitration proceeding has preclusive effect, and the courts have indicated that arbitration proceedings are given preclusive effect as to subsequent judicial proceedings. The second proceeding here is a judicial proceeding. Further, neither a statutory exception nor the secondary arbitration proceedings theory applies to the present case.

## CONCLUSION

Because the parties have already litigated the issue of liability for the accident and none of the exceptions to the doctrine of collateral estoppel apply, the court grants the defendant's motion for summary judgment.